IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| ADMIRAL INSURANCE COMPANY, | ) |
| | ) |
| | ) CASE NO. 1:20-cv-110 |
| Plaintiff | ) |
| | ) |
| v. | ) |
| | ) |
| ONE RESOURCE GROUP CORPORATION, | ) |
| and CORY RECKARD, | ) |
| | ) |
| Defendants | ) |

## COMPLAINT FOR DECLARATORY JUDGMENT

Plaintiff, Admiral Insurance Company ("Admiral"), by counsel, for its Complaint for Declaratory Judgment against Defendants One Resource Group Corporation, ("ORG") and Cory Reckard ("Reckard") states:

## Nature of the Action

1.  This is an action seeking declaratory relief to determine a real, actual and justifiable controversy among the parties with respect to their rights and obligations regarding a certain insurance contract as more fully describe below.

## The Parties and Jurisdiction

2.  Admiral is a corporation organized under the laws of the State of Delaware with a principal place of business in Scottsdale, Arizona.

3.  ORG is a corporation organized under the laws of the State of Indiana with a principal place of business in Roanoke, Indiana.

4. Cory Reckard is a resident and citizen of the State of Indiana, residing in Poneto, Indiana.

5. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §1332, as the amount in controversy exceeds the sum of $75,000, exclusive of costs and interest, and this action is between citizens of different states.

6. Venue lies in this District pursuant to 28 U.S.C. § 1391(a).

## **The Policy**

7. ORG is the named insured on an "Insurance Agents and Brokers Professional Liability Policy" issued by Admiral and bearing policy number EO 00004997701, having effective dates at the time it was issued of September 1, 2019 to September 1, 2020 as stated therein (hereafter "the Policy").

8. A true and accurate copy of the Policy is attached as Exhibit A.

9. On November 26, 2019, a Cancellation Notice concerning the Policy was issued in compliance with the terms of the Policy, cancelling the Policy effective December 29, 2019 as stated therein.

10. Following the cancellation of the Policy, the effective dates of the Policy are from September 1, 2019 to December 29, 2019 as stated therein.

11. The declarations to the Policy define ORG's business as:

[s]olely in the performance of professional services as licensed Life, Accident, and Health insurance agent/broker for others for a fee.

12. The Policy contains an Insuring Agreement section which provides, in part:

    **I.** INSURING AGREEMENTS

        **A.** We will pay on behalf of the **Insured** those amounts which the **Insured** is legally obligated to pay as **damages** caused by a **professional incident** taking place within the policy territory and subsequent to the retroactive date and prior to the expiration or termination date of this policy, for which a **claim** is first

  made against the **Insured** during the **policy period** and reported to us in writing during the **policy period** or any applicable extended reporting period, as described in Section VI Extended Reporting Period; provided that prior to the inception date of this policy, no **Insured** knew, nor could have reasonably foreseen, that the **professional incident** might result in a **claim.**

 **B.** We have the right and duty to defend any **claim** brought against the **Insured** seeking **damages** caused by a **professional incident** to which this insurance applies**,** including the right to appoint counsel to defend the **Insured**, and will do so even if any of the allegations of the **claim** are groundless, false or fraudulent. We may make such investigation of any **claim** as we deem expedient. Our right and duty to defend ends when we have exhausted the applicable Limits of Liability in the payment of **damages** and/or **claim expenses,** or have tendered the applicable Limits of Liability to a court of competent jurisdiction.  We have no obligation or duty to defend any **claim** for which coverage is excluded hereunder or not otherwise afforded by this policy and we are not obligated to pay any **claim expenses** incurred by the **Insured** in the defense of any **claim** not covered by this policy.

13. The Policy includes the following definitions:

 **II.** DEFINITIONS

* * *

 **E.  Claim** means:

  **1.** a written demand received for money or services by any **Insured** resulting from a **professional incident.**

  **2.** service of **suit** against an **Insured**.

**Claim** includes **Related Claims.  Related Claims** means two or more **Claims** arising out of a **Professional Incident** or **Professional Incidents** that are logically or causally connected.

* * *

 **G. Damages** means a monetary and compensatory judgment, award or settlement, including punitive or exemplary **damages** to the extent such amounts are insurable as defined by applicable law and, or statute.

 However, **damages** shall not include:

  **1.** any **damages,** other than punitive or exemplary **damages,** which are a multiple of compensatory **damages**, taxes or fees;

  **2.** amounts the **Insured** is required to pay or return as restitution;

  **3.** fines, penalties, sanctions, taxes or fees, other than punitive or exemplary **damages**, assessed against the **Insured**;

3

    **4.** judgments or awards arising from acts deemed uninsurable by law;

    **5.** fees or charges, including over-charges or cost overruns incurred by any **Insured**;

    **6.** collecting fees of an **Insured** from a third party;

    **7.** the return of fees or other compensation paid to an **Insured**;

    **8.** non-pecuniary relief.

* * *

**P. Policy Period** means the period from the inception date stated in the Declarations to the expiration date stated in the Declarations, or its earlier termination date, if any.

**Q. Professional Incident** means:

    **1.** **personal injury** committed by the **Insured** in the rendering of or failure to render **professional services** by the **Insured** or a person acting under the **Insured's** direction, control or supervision and for whose acts, errors or omissions the **Insured** is legally liable; or

    **2.** a negligent act, error or omission in the rendering of or failure to render **professional services** by the **Insured** or a person acting under the **Insured's** direction, control or supervision and for whose acts, errors or omissions the **Insured** is legally liable.

All **professional incidents** that are logically or causally connected will be deemed one **professional incident** that, for the purpose of determining coverage under this policy, occurred at the time of the earliest act, error or omission.

**R. Professional Services** means services performed by an **Insured** for others involving specialized training, knowledge and skill while in the pursuit of the business stated in the Declarations.

* * *

14. Section V of the Policy contains various exclusions, including the following:

* * *

**N.** any **claim** based upon or arising out of, in whole or in part, directly or indirectly, liability you assume under any contract or agreement; however, this exclusion does not apply to liability you would have in the absence of such contract or agreement;

* * *

>**Q.** Any claim based upon or arising out of, in whole or in part, directly or indirectly, express warranties or guarantees;
>
>**R.** any claim based upon or arising out of, in whole or in part, directly or indirectly, fee disputes;
>
> * * *
>
>**Y.** any claim based upon or arising out of, in whole or in part, directly or indirectly, investment advice or while acting as an investment counselor, securities or investment broker or financial advisor, or arising out of the failure to invest or the lack of performance of any investment or from any variation in the market value of any investment, or the sale of mutual funds or variable annuities; however, this exclusion shall not apply to the sale of fixed annuity products related to the Insured's activities as a Life Insurance Agent.

15. The Policy also includes an Amendatory Endorsement-Exclusions for Insurance Agents and Brokers, which provides in part:

>In consideration of the premium charged, it is understood and agreed that Exclusion **W.** as shown under SECTION **V.** EXCLUSIONS is hereby deleted in its entirety and replaced with the following:
>
>**W.** any **claim** based upon or arising out of, in whole or in part, directly or indirectly, a cease and desist order, insolvency, bankruptcy, licensing, receivership, liquidation or inability to pay of any insurance company, trust, organization, risk retention group, health maintenance organization, preferred provider organization or other vehicle directly or indirectly in which any **Insured** has placed or obtain insurance coverage or placed the funds of a client or account; however, this exclusion shall not apply to any **claim** arising out of a cease and desist order, insolvency, bankruptcy, licensing, receivership, liquidation or inability to pay of any insurance company guaranteed by a governmental body or bodies or operated by a governmental body or bodies (including but not limited to assigned risk plans, Joint Underwriting Association's, or Fair Plans) or any insurance company rated B+ or better according to A.M. Best Ratings or any insurance company rated A or better according to Demotech, Inc. at the time of the place of such coverage.
>
> * * *

16. The Policy also includes an Insurance Agents and Brokers Network Security and Data Privacy Liability Endorsement, which provides in part:

5

<u>No Defense Obligation for Excluded Claims</u>
For any **claim** made or **suit** brought which is excluded under the terms of this insurance, the Company shall not have the obligation to defend, adjust, investigate or pay any cost for investigation, defense, adjustment or attorney fees arising out of such **claims**.

## The Underlying Litigation

17. On July 3, 2019, Plaintiffs Columbus Medical Equipment, Inc., Robert Jones and Pamela Mulberry (collectively, "CME") filed a Complaint ("CME Complaint") against Defendant Cory Reckard, in the Court of Common Pleas of Franklin County, Ohio, Case No. 19 CV 005430.

18. The CME Complaint is comprised entirely of claims regarding alleged investment advice and contains the following allegations:

- "the Defendant recommended that the Plaintiffs invest in promissory notes issued by Woodbridge Mortgage **Investment Fund** 3A, LLC, and Woodbridge Mortgage **Investment Fund** 4, LLC."

- "Defendant specifically advised the Plaintiffs that the aforementioned promissory notes were safe and secure **investments**…"

- "[R]elying solely upon the recommendation of Defendant, on or about July 13, 2017, CME purchased a promissory note issued by Woodbridge Mortgage **Investment Fund** 4, LLC…"

- "[R]elying solely upon the recommendation of Defendant, on or about July 26, 2017, Pamela **invested** $100,000.00 in a promissory note issued by Woodbridge Mortgage **Investment Fund** 3A, LLC."

- "Relying solely upon the recommendation of Defendant, on or about July 12, 2017, Robert **invested** $100,000.00 in a promissory note issued by Woodbridge Mortgage **Investment Fund** 4, LLC."

- "The Woodbridge Group of Companies, including the specific Woodbridge entities that issued the Promissory Notes purchased by Plaintiffs, filed for protection under the United States Bankruptcy Code on December 4, 2017."

- "Plaintiffs have recovered virtually no portion of the $700,000.00 in principal that they collectively **invested**…"

- "The Woodbridge Group of Companies…have been alleged by various state securities regulators and the U.S. Securities and Exchange Commission to be

6

classic "Ponzi schemes," whereby an extraordinary amount of money from numerous **investors** was diverted illegally…"

SECOND CAUSE OF ACTION – NEGLIGENT MISREPRESENTATION/NEGLIGENT INVESMENT[SIC] ADVICE

- "Defendant had a duty to Plaintiffs to disclose all of the risks associated with the **investments** he was recommending and/or undertaking on behalf of Plaintiffs."

- "Defendant had a duty to recommend to Plaintiffs **investments** that were consistent with their stated **investment** objectives and risk tolerance."

- "Defendant breached his duties…[by] the utterly irresponsible recommendation that they **invest** in completely illiquid securities issued by a corrupt enterprise."

- "Plaintiffs explained to Defendant that they were interested in safe, conservative, income producing **investments."**

- "Defendant, holding himself out to be an **investment** expert, advised Plaintiffs that he would recommend **investments** that were consistent with Plaintiffs' stated **investment** objectives…"

- "Plaintiffs agreed to have Defendant act as their **investment** advisor.  Plaintiffs and Defendant thereby entered into an oral or implied contract whereby Defendant would provide **investment** advice…"

- "Defendant is in default of his contract with Plaintiffs inasmuch as the **investments** in the aforementioned promissory notes which he recommended were not safe or conservative but instead extremely risky and quickly exposed Plaintiffs' principal to complete loss."

(CME Complaint, ⁋⁋ 7-33)(emphasis added).

19. A copy of the CME Complaint is attached hereto as Exhibit "B".

20. On October 8, 2019, Defendant Reckard denied allegations of CME, and filed a Third-Party Complaint against ORG ("Third-Party Complaint").

21. In this Third-Party Complaint, Reckard alleges, among other things, that ORG was responsible for providing the Woodbridge promissory notes, that ORG violated "its statutory,

7

fiduciary and contractual obligations to" Reckard, and that ORG is liable to indemnify Reckard for all damages for which he is liable to CME as alleged in the CME Complaint..

22. A copy of the Third-Party Complaint is attached hereto as Exhibit "C".

23. A coverage denial letter was issued by Admiral to ORG on October 31, 2019.

## COUNT I:   DECLARATORY JUDGMENT

24. Admiral incorporates by reference the allegations of the preceding paragraphs as if fully set forth herein.

25. Under 28 U.S.C. § 2201, this Court may declare the rights and other legal relations of the parties to this lawsuit with respect to the Policy.

26. An actual controversy exists regarding whether the Policy provides coverage concerning or related to the allegations against ORG in the Third-Party Complaint.

27. The Defendants have the burden of establishing the provisions of any Policy which they assert affords defense and/or indemnity from Admiral.

28. The allegations contained in the CME Complaint against Reckard concern alleged investment advice and/or alleged conduct as an "investment advisor".

29. The Third-Party Complaint of Reckard against ORG seeks (a) to hold ORG liable for alleged investment advice, alleged conduct as an investment counselor, securities or investment broker or financial advisor, and/or the lack of performance of any investment or from any variation in the market value of any investment, or the sale of mutual funds or variable annuities; and (b) to require ORG to  indemnify Reckard regarding alleged investment advice, alleged conduct as an investment counselor, securities or investment broker or financial advisor, and/or the lack of performance of any investment or from any variation in the market value of any investment, or the sale of mutual funds or variable annuities.

30. The allegations against ORG in the Third-Party Complaint do not constitute a professional incident under the Insuring Agreement of the Policy.

31. Because the allegations in the Third-Party Complaint do not constitute a professional incident under the Insuring Agreement of the Policy, Admiral does not owe any defense or indemnity obligations concerning or related to the Third-Party Complaint.

32. Further, the Policy does not apply to:

> **Y.** any **claim** based upon or arising out of, in whole or in part, directly or indirectly, investment advice or while acting as an investment counselor, securities or investment broker or financial advisor, or arising out of the failure to invest or the lack of performance of any investment or from any variation in the market value of any investment, or the sale or mutual funds or variable annuities; however, this exclusion shall not apply to the sale of fixed annuity products related to the **Insured's** activities as a Life Insurance Agent.

33. The Third-Party Complaint of Reckard against ORG is based upon and arises out of alleged investment advice, alleged conduct as an investment counselor, securities or investment broker or financial advisor, and/or the lack of performance of any investment or from any variation in the market value of any investment, or the sale of mutual funds or variable annuities.

34. Because the allegations in the Third-Party Complaint constitute a claim excluded under Exclusion Y of the Policy, Admiral does not owe any defense or indemnity obligations concerning or related to the Third-Party Complaint or any claims of Reckard.

35. The allegations in the Third-Party Complaint are based upon or arise out of, in whole or in part, directly or indirectly the Woodbridge Bankruptcy.

36. Because the allegations in the Third-Party Complaint are based upon or arise out of, in whole or in part, directly or indirectly the Woodbridge Bankruptcy, these allegations constitute claims excluded under Exclusion W and Admiral does not owe any defense or indemnity obligations concerning or related to the Third-Party Complaint or any claims of Reckard.

37. In addition, the allegations in the Third-Party Complaint constitute a claim excluded under Exclusions N, Q and/or R of the Policy.

38. Because the allegations in the Third-Party Complaint constitute a claim excluded under Exclusions N, Q and/or R of the Policy, Admiral does not owe any defense or indemnity obligations concerning or related to the Third-Party Complaint or any claims of Reckard.

39. The Insuring Agreement only affords coverage for "damages caused by a professional incident taking place . . . subsequent to the retroactive date . . ." as stated therein.

40. In any event, Admiral is not liable for any alleged damages sought in the CME Complaint, and/or Reckard's Third-Party Complaint which are not included in the Insuring Agreement of the Policy.

41. For the foregoing reasons, Admiral is entitled to a declaration from the Court that Admiral does not owe any defense or indemnity obligations concerning or related to the Third-Party Complaint or any claims of Reckard.

WHEREFORE, Plaintiff Admiral Insurance Company, by counsel, requests that the Court adjudicate and declare that:

(a) Admiral does not have any duty or obligation to defend or indemnify ORG concerning or related to the Third-Party Complaint or any claims of Reckard;

(b) Admiral does not have any defense and/or indemnity obligations as a result of its issuance of the Policy concerning or related to the Third-Party Complaint or any claims of Reckard; and

(c) Admiral is entitled to such other relief which is appropriate in the premises.

        Respectfully submitted,

        FROST BROWN TODD LLC


By: */s/ Dean R. Brackenridge*
    Carrie G. Doehrmann, #16691-49
    Dean R. Brackenridge, ##18543-49
    Attorneys for Plaintiff, Admiral
    Insurance Company, a Berkley
    Company

FROST BROWN TODD LLC
201 N. Illinois St., Suite 1900
P.O. Box 44961
Indianapolis, IN  46244-0961
317-237-3800
Fax: 317-237-3900
cdoehrmann@fbtlaw.com
dbrackenridge@fbtlaw.com

0119409.0726306   4836-1959-5182v4